UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PORT OF BELLINGHAM,<br><br>                          Plaintiff,<br>     v.<br><br>BORNSTEIN SEAFOODS, INC.,<br><br>                         Defendant. | CASE NO. C21-0245JLR<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND |

## I.    INTRODUCTION

Before the court is Plaintiff Port of Bellingham's (the "Port") motion to remand this action to Whatcom County Superior Court. (Mot. (Dkt. # 8); *see also* Reply (Dkt. # 12).) Defendant Bornstein Seafoods, Inc. ("Bornstein") opposes the Port's motion. (Resp. (Dkt. # 10).) The court has considered the motion, all submissions filed in support

//
//
//

of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS the Port's motion to remand.

## II. BACKGROUND

This action stems from efforts to clean up environmental contamination at the I & J Waterway Site (the "Site") in Bellingham Bay, Washington. (*See* Compl. (Dkt. # 1-2) ¶ 1.1.) The court's analysis of the Port's motion implicates both the instant action and a separate lawsuit that Bornstein filed in this court. Below, the court sets forth the factual background of the Port's lawsuit and the procedural background of the lawsuits filed by the Port and Bornstein.

### A. Factual Background

The Port owns property upland from the Site where, since 1959, Bornstein has operated a seafood processing plant pursuant to a series of lease agreements and renewals with the Port. (*Id.* ¶¶ 3.1, 3.3.) Beginning in 1994, environmental site assessments conducted at the Site indicated that hazardous substances had been released into the waterway and sediments. (*Id.* ¶ 3.5.)

In 2019, after a remedial investigation/feasibility study found hazardous substances in the sediments at the Site, the Port and Bornstein entered into an Agreed Order with the Washington State Department of Ecology ("Ecology"). (*Id.* ¶¶ 3.12-3.18.) The Agreed Order requires the Port and Bornstein to work together to develop the design of the cleanup action for a portion of the Site. (*Id.* ¶¶ 3.19-3.21.) The Port anticipates

---

[1] Bornstein requests oral argument. (*See* Resp. at 1.) The court, however, finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

that it will incur significant costs in conducting the cleanup at the Site and in implementing the remedial action required under the Agreed Order. (*Id.* ¶ 3.23.)

**B.     Procedural Background**

On January 7, 2021, Bornstein filed a lawsuit in this court against the City of Bellingham (the "City") relating to the cleanup of the Site. (*See Bornstein v. City of Bellingham,* No. C21-0022JLR (W.D. Wash.) (filed Jan. 7, 2021).) In that lawsuit, Bornstein alleges that the City is liable for the costs of cleanup and remedial action at the Site because the City's stormwater system and other City facilities are sources of hazardous substances that have contaminated the Site. (*See generally* Bornstein Compl. (C21-0022JLR Dkt. # 1)[2] ¶¶ 1-7.) Bornstein asserts claims against the City under the federal Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA") and Washington's Model Toxics Control Act, chapter 70A.305 RCW ("MTCA") for contribution and for a declaratory judgment that the City is obligated to pay for all remedial action costs that Bornstein has incurred or will incur related to contamination of the Site. (*See* Bornstein Compl. ¶¶ 33-62.) Bornstein did not name the Port in its initial complaint. (*See generally id.*)

On February 1, 2021, the Port filed this lawsuit in Whatcom County Superior Court. (*See* Compl.) The Port alleges claims under the MTCA against Bornstein for contribution and for a declaratory judgment that Bornstein is strictly liable, jointly and severally, for remedial action costs at the Site. (*See id.* ¶¶ 4.1-5.4.) The Port did not

---

[2] For ease of reference, the court identifies filings in *Bornstein v. City of Bellingham* by including the case number in the citation.

assert any federal claims against Bornstein. (*See generally id.*) According to the Port, it asserted only MTCA claims because the hazardous substances in the sediment at the Site include petroleum, which is not regulated under CERCLA. (*See* Mot. at 3; *compare* RCW 70A.305.020(13)(d) (defining "[h]azardous substance" as including "[p]etroleum or petroleum products") *with* 42 U.S.C. § 9601(14) (stating that the term "hazardous substance . . . does not include petroleum.").) On February 25, 2021, Bornstein answered the Port's complaint and asserted counterclaims for contribution and a declaratory judgment of liability under both the MTCA and CERCLA § 107, 42 U.S.C. § 9607. (*See* 1st Woolson Decl. (Dkt. # 8-1) ¶ 5, Ex. D ("Answer") ¶¶ 7.1-8.9.)

On February 26, 2021, the day after it filed its answer, Bornstein removed the Port's lawsuit to this court. (*See* Not. of Removal (Dkt. # 1).) Bornstein argues that this court has federal question jurisdiction over the action based on its CERCLA counterclaim. (*See id.* at 2-3.) The Port filed the instant motion to remand on March 12, 2021. (*See* Mot.)

On March 18, 2021, Bornstein amended its complaint in its federal lawsuit to name the Port as an additional defendant. (*See* Bornstein Am. Compl. (C21-0022JLR Dkt. # 7).) Bornstein added claims against the Port for contribution and a declaratory judgment of liability under the MTCA and CERCLA § 107—the same claims it alleged in its counterclaims in this action. (*See id.* ¶¶ 73-101.) On April 1, 2021, Bornstein filed a motion to consolidate this case with *Bornstein*. (*See* Bornstein Mot. to Consolidate (C21-0022JLR Dkt. # 14).) The Port filed a motion to dismiss Bornstein's claims against

it on April 26, 2021.  (*See* Bornstein MTD (C21-0022JLR Dkt. # 18)).)  Those motions are still pending before the court.  (*See* C21-0022JLR Dkt.)

### III.    ANALYSIS

Below, the court sets forth the legal standards regarding removal jurisdiction and then considers the Port's motion to remand.

**A.    Legal Standard**

A civil action brought in a state court may be removed to a federal district court if the federal district court could have exercised original jurisdiction over the action.  *See* 28 U.S.C. § 1441.  In general, federal jurisdiction exists when a claim either (1) arises under the Constitution and laws of the United States, or (2) arises between citizens of different states and the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. §§ 1331, 1332.  Federal courts strictly construe the removal statute and must reject jurisdiction if there is any doubt as to the right of removal in the first instance.  *See Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  Thus, the defendant has the burden of establishing that removal is proper.  *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

The Supreme Court has repeatedly held that "in order for a claim to arise 'under the Constitution, laws, or treaties of the United States,' 'a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'"  *Philips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 127 (1974) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)).  This essential federal element must appear in the plaintiff's own statement of its cause of action.  *Louisville &*

*N.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10 (1983) ("For better or worse . . . a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law."). Whether a complaint raises a federal question is determined by use of the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* The well-pleaded complaint rule does not permit a finding of jurisdiction "predicated on an actual or anticipated defense" or "upon an actual or anticipated counterclaim." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).

**B.     The Port's Motion to Remand**

The Port argues that this matter must be remanded to the Whatcom County Superior Court because the complaint does not, on its face, present a federal question. (Mot. at 4-5.) Bornstein responds that removal is appropriate because (1) federal courts have exclusive jurisdiction over CERCLA claims and (2) the Port engaged in "artful pleading" by asserting only state-law claims in its lawsuit despite Bornstein's earlier-filed CERCLA action in this court. (Resp. at 4-10.) The court considers each of Bornstein's arguments in turn.

1. Exclusive Jurisdiction

Section 113(b) of CERCLA confers on federal district courts "exclusive original jurisdiction over all controversies arising under" CERCLA. 42 U.S.C. § 9613(b). Bornstein asserts that because state courts cannot decide CERCLA claims, this court must avoid "uncritically apply[ing]" the well-pleaded complaint rule, accept jurisdiction over this case based on Bornstein's CERCLA counterclaim, and deny the motion to remand. (Resp. at 4-7.) Bornstein does not, however, cite a single case in which a federal court denied a motion to remand where the defendant pleaded a counterclaim over which federal courts have exclusive jurisdiction in response to a plaintiff's state-law complaint. (*See generally id.*)

The United States Supreme Court recently addressed the issue of CERCLA § 113(b)'s grant of exclusive jurisdiction to the federal courts in *Atlantic Richfield Company v. Christian*, 140 S. Ct. 1335 (2020). In that case, owners of Montana property that was within the boundaries of a CERCLA Superfund site brought suit in state court under state-law causes of action related to pollution damage on their property. *Id.* at 1347. They sought, in part, restoration damages meant to restore the property to the condition it was in before the pollution damage. *Id.* at 1347-48. The plaintiffs' restoration plan was stricter and more costly than a cleanup plan approved for the site under CERCLA. *Id.* Atlantic Richfield moved to dismiss the case, arguing that CERCLA § 113 stripped the state court of jurisdiction to decide claims relating to a CERCLA cleanup site. *Id.* at 1348. The Court affirmed the Montana Supreme Court's determination that § 113 did not strip the Montana state court of jurisdiction to decide the

1. Exclusive Jurisdiction

Section 113(b) of CERCLA confers on federal district courts "exclusive original jurisdiction over all controversies arising under" CERCLA. 42 U.S.C. § 9613(b). Bornstein asserts that because state courts cannot decide CERCLA claims, this court must avoid "uncritically apply[ing]" the well-pleaded complaint rule, accept jurisdiction over this case based on Bornstein's CERCLA counterclaim, and deny the motion to remand. (Resp. at 4-7.) Bornstein does not, however, cite a single case in which a federal court denied a motion to remand where the defendant pleaded a counterclaim over which federal courts have exclusive jurisdiction in response to a plaintiff's state-law complaint. (*See generally id.*)

The United States Supreme Court recently addressed the issue of CERCLA § 113(b)'s grant of exclusive jurisdiction to the federal courts in *Atlantic Richfield Company v. Christian*, 140 S. Ct. 1335 (2020). In that case, owners of Montana property that was within the boundaries of a CERCLA Superfund site brought suit in state court under state-law causes of action related to pollution damage on their property. *Id.* at 1347. They sought, in part, restoration damages meant to restore the property to the condition it was in before the pollution damage. *Id.* at 1347-48. The plaintiffs' restoration plan was stricter and more costly than a cleanup plan approved for the site under CERCLA. *Id.* Atlantic Richfield moved to dismiss the case, arguing that CERCLA § 113 stripped the state court of jurisdiction to decide claims relating to a CERCLA cleanup site. *Id.* at 1348. The Court affirmed the Montana Supreme Court's determination that § 113 did not strip the Montana state court of jurisdiction to decide the

state-law claims. *Id.* at 1349. In relevant part, the Court determined that § 113(b) did not apply because the case did not "arise under" CERCLA. *Id.* at 1349-50. The Court reasoned that the grant of exclusive jurisdiction in § 113(b) was akin to the grant of federal question jurisdiction in 28 U.S.C. § 1331, which provides the district courts jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." *Id.* (quoting 28 U.S.C. § 1331). Thus, because the Montana property owners brought solely state law claims, their claims "arose under" Montana law rather than CERCLA, and the Montana court retained jurisdiction over the lawsuit. *Id.* at 1350; *see also City of Visalia v. Mission Linen Supply, Inc.*, No. 1:19-cv-1809 AWI EPG, 2020 WL 2556763, at *6-*7 (E.D. Cal. May 20, 2020) (analyzing *Atlantic Richfield* and granting plaintiff's motion to remand under § 113(b) where plaintiff's complaint was "brought entirely under state law").

Here, as in *Atlantic Richfield*, the Port brought its complaint entirely under state law. (*See generally* Compl.) It seeks relief solely under the MTCA and does not make any claims under CERCLA. (*See id.*) The court concludes that CERCLA § 113(b) does not apply to strip the state court of jurisdiction to decide this case and does not disturb the rule that removal jurisdiction lies only where a federal question is presented in the plaintiff's well-pleaded complaint.

    2.    <u>"Artful Pleading"</u>

Bornstein also asserts that this court should accept removal jurisdiction over this case under the artful pleading rule. (Resp. at 7-11.) Under this rule, a "plaintiff may not defeat removal by omitting to plead necessary federal questions." *Hansen v. Grp. Health*

*Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018). Federal question jurisdiction will exist despite no federal claim appearing on the face of the complaint in a "small category of cases" in which a state law claim "necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state power." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016); *see also ARCO Envtl. Remediation, LLC v. Dep't of Health and Envtl. Quality of the State of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000) (stating that a state-created cause of action can be deemed to arise under federal law "where the claim is necessarily federal in character").

Bornstein argues that the Port's MTCA claim is necessarily federal in character, and that this court should therefore accept jurisdiction over this case, because the Port filed its MTCA action in state court "a mere three weeks after" Bornstein filed its CERCLA case "concerning precisely the same site and the same parties." (Resp. at 8.) Thus, according to Bornstein, this action is a "clear attempt to collaterally attack a private CERCLA enforcement action" and therefore necessarily raises a federal issue. (*Id.* at 10-11.) Bornstein relies on *Lehman Bros. Inc. v. City of Lodi*, 333 F. Supp. 2d 895, 906 (E.D. Cal. 2004), in which the district court found that the plaintiff had engaged in artful pleading in its state court lawsuit and denied the plaintiff's motion to remand.

As the Port points out, however, *Lehman Bros.* is readily distinguishable from this case. (*See* Reply at 4-5.) In that case, the City of Lodi filed a lawsuit in federal court "seeking a judicial declaration . . . that it [was] not obligated to repay to Lehman the financing of its environmental remediation litigation" pursuant to an investment contract

entered into by the parties relating to a CERCLA cleanup. *Lehman Bros.*, 333 F. Supp. 2d at 899. Four days later, Lehman filed a parallel action against the City in state court, seeking a declaration that the City's obligation to repay Lehman was "absolute and unconditional." *Id.* The City removed the action to federal court. *Id.* The district court determined that Lehman's claim was properly in federal court because "the ill-fated strategy to reorder CERCLA priorities, propelled by the [i]nvestment [c]ontract . . . ha[d] caused significant delay in remediation as well as a diversion of substantial resources from cleanup." *Id.* Because "[s]uch purposeful conduct present[ed] a radical challenge to CERCLA under Section 113(b)" the court was "compel[led] to exercise jurisdiction." *Id.* The court concluded that Lehman had "artfully pleaded" a challenge to a CERCLA cleanup—a claim over which the court would have had exclusive jurisdiction under § 113(b)— and denied Lehman's motion to remand. *Id.*

Here, by contrast, the Port did not file its state-court lawsuit against Bornstein as a parallel lawsuit to Bornstein's federal-court lawsuit against the City; indeed, Bornstein did not name the Port as a party to its lawsuit until six weeks after the Port filed its state-court action and three weeks after it filed its notice of removal. (*See* Compl.; Not. of Removal; Bornstein Am. Compl.) In addition, neither lawsuit involves claims that pose a challenge to the cleanup of the Site. Rather, both lawsuits concern claims for remedial action costs, which the Supreme Court has made clear are not challenges to cleanup plans. *See Atlantic Richfield*, 140 S. Ct. at 1352 ("Many claims brought under [CERCLA], such as those to recover cleanup costs under [CERCLA] § 107, are not challenges to cleanup plans."); (*see also* Compl.; Answer; Bornstein Am. Compl.) For

these reasons, the court concludes that the Port did not engage in artful pleading in its complaint against Bornstein. Because the court must strictly construe the removal statue and reject jurisdiction if there is any doubt as to the defendant's right of removal, *see Gaus*, 980 F.2d at 566, the court grants the Port's motion to remand.

C. **Attorney's Fees**

The Port seeks an award of attorney's fees pursuant to 28 U.S.C. § 1447(c), which provides that a court granting a motion to remand may order the removing defendant to pay the plaintiff its "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); (*see* Mot. at 6; Reply at 6-7).

The standard for awarding fees when remanding a case to state court "'should turn on the reasonableness of the removal.'" *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)). "'Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Id.* (quoting *Martin*, 546 U.S. at 141). Removal is not objectively unreasonable "solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Id*. Rather, the court must determine whether the defendant's arguments supporting removal were "clearly foreclosed." *Id.* at 1065-66.

Here, the court concludes that although Bornstein's arguments in favor of removal were unsuccessful, they were not "clearly foreclosed." *See id.* Therefore, the court denies the Port's request for attorney's fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS the Port's motion to remand this matter to the Whatcom County Superior Court (Dkt. # 8).

Dated this 4th day of May, 2021.

JAMES L. ROBART
United States District Judge